# W. R. GRACE & CO. v. NAGLE.

## (Circuit Court of Appeals, Second Circuit. June 1, 1921.)

### No. 249.

1. **Sales ⧳32—In case of contract by correspondence, written contract need not be evidenced by single paper.**

   Where, if there was a contract made, it was to be spelled out of correspondence between the parties, it could not be said that there was not an express contract in writing, complete in its essentials, merely because there was no one document which could be labeled the contract between the parties.

2. **Contracts ⧳29—Whether several papers constituted written contract question of fact.**

   Whether a number of paper writings evidenced a contract complete in all its essentials was a question of fact, and when both parties moved for a direction of verdict, the resolution of such fact inquiry was for the court.

3. **Frauds, statute of ⧳90(4), 95(1)—Statute held satisfied as to sales contract by a delivery and acceptance thereunder as a part payment and acceptance of goods.**

   Where an owner of slabs and a manufacturer of steel plates made an arrangement whereby slabs were to be taken by the manufacturer of the

steel plates at a certain price, and steel plates were to be delivered to the seller of the slabs at a certain price, the statute (Personal Property Law, N. Y. § 85) was satisfied on delivery of the slabs to the manufacturer of the steel plates and acceptance by the seller of the slabs of part of the steel plates, that constituting part payment and acceptance of part of the goods or choses in action so contracted to be sold.

4. Sales ⚬⟳384(2)—Measure of damages for breach of contract to receive difference between contract and market prices.

    Under Personal Property Law N. Y. § 145, where owner of steel slabs sold them to a manufacturer of steel plates at a certain price, and agreed to purchase the steel plates to be manufactured, of such sizes as should be directed, at a certain price, and the contemplated sizes were articles widely dealt in in the open market, and quoted from day to day in trade publications of authority, the measure of damages for failure of the seller of the slabs to receive the steel plates was the difference between the contract price of the steel plates and the market price thereof.

In Error to the District Court of the United States for the Southern District of New York.

Action by Louis F. Nagle, doing business as the Nagle Steel Company, against W. R. Grace & Co. Judgment for plaintiff, and defendant brings error. Affirmed.

Harold J. Roig, of New York City, for plaintiff in error.

Everett, Clarke & Benedict, of New York City (A. Leo Everett, of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. This action is to recover a balance due upon an agreement between the litigants correctly described by the trial judge as one partly of barter and partly of sale.

Nagle is a manufacturer of steel plates—that is, he "rolls steel plates from steel slabs"—and he specializes in that branch of industry. Grace & Co., in the summer of 1917, had many tons of "slabs" which they wished to have turned into "plates," apparently for export. Thereupon an admitted arrangement was made between the parties, by which Grace shipped to Nagle slabs at one price, it being agreed that Nagle would convert them as ordered into plates, and bill the plates to Grace at another price. Under this admitted agreement some 600 tons of slabs were turned into plates, and there remained in Nagle's possession some extra slabs.

Then followed a lengthened correspondence between the parties as to whether and at what price about 400 more tons of slabs would be taken by Nagle, and at what price Nagle would sell the material back to Grace after he had turned it into plates of the shape and size required from time to time by Grace.

In result Grace shipped to Nagle all the 400 tons of slabs, but never gave directions for the making therefrom of more than about 76 tons of plates, and ultimately refused to give any such directions. This action was brought by Nagle alleging that a contract had been made by which said 400 tons of slabs were to become plates, and that Grace had broken the contract, in that he "neglected and refused to furnish speci-

⚬⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fications" for the manufacture of all the material except 76 tons, although Nagle was "ready and willing to manufacture the same."

If any contract between these parties was ever made, it is to be spelled out of a lengthened correspondence; there was substantially no other evidence before the court.

At the close of the testimony both parties moved for a verdict, which was awarded to the plaintiff below.

The points here argued are: (1) That the parties "never entered into an express contract in writing, complete in its essential elements"; (2) the contract as spelled out from the correspondence of the parties is insufficient under the statute of frauds; (3) plaintiff's damages were incorrectly assessed.

[1, 2] That there cannot be selected from among the letters and telegrams in evidence any one document that can be labeled the contract between the parties is true enough. But this is immaterial. Whether the paper writings introduced evidence a contract complete in its essentials was a question of fact, in the sense of inference from admitted or uncontradicted events; and that (when both parties moved for a direction) the resolution of this fact inquiry was for the court is a matter too well settled to require citation. We are of opinion that the court below drew the correct inference, but certainly no error of law was committed in declaring that these writings constituted a contract.

[3] Assuming now that there was a written contract complete in all essentials, there is no merit in the contention that the statute of frauds was not complied with. The applicable statute was that of New York (Personal Property Law [Consol. Laws, c. 41] § 85), and that statute is either satisfied or avoided (it makes no difference which word is used) if the buyer "accepts part of the goods or choses in action so contracted to be sold," or if he "gives something in earnest to bind the contract, or in part payment." There is no sort of doubt that Grace made a part payment for the plates by delivering 400 tons of slabs, and it is equally certain that Grace accepted from Nagle 76 tons of plates made out of some of those slabs. This was enough.

The objection to the method of assessing damages is that the court below allowed to plaintiff the difference between the contract price and market price of plates, whereas it is contended that the award should have been of the difference (if any) between the cost of production and the contract price.

[4] The argument rests on such cases as Hinckley v. Pittsburgh, etc. Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967, and Kingman v. Western, etc., Co., 92 Fed. 486, 34 C. C. A. 489. In all such cases the contract was for the making by the vendor of a peculiar or especial kind of goods for which it could not be said that there was any market value except such as was produced by the efforts of the vendor alone. Under such circumstances it is plainly dangerous, and usually unjust, to let the vendor establish his own market; hence the ruling.

In this case the slabs were to be made into plates of such sizes as should be directed, but the evidence is clear and uncontradicted that all the contemplated sizes were articles widely dealt in in the open market and quoted from day to day in trade publications of authority.

Under such circumstances the rule adopted by the court below was correct, and is indeed expressed in Personal Property Law of New York, § 145, which declares that "in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market price" is the normal measure of damage.

There were no special circumstances here, the contract was for a standard article, and the judgment below is affirmed, with costs.